Gordon, Robert B., J.
This case arises out of allegations that plaintiff Susan Manter was the victim of physical, sexual and psychological abuse at the hands of defendant Charles Michael Abdelhad (“Father Michael”), the former pastor of St. George Antiochian Orthodox Cathedral (the “Church”} where Ms. Manter was a parishioner. In addition to the direct assertion of tort claims against Father Michael, as well as related claims against five other ordained members of the professional clergy affiliated with the parish or Diocese, plaintiff has brought suit against 14 lay-persons who performed volunteer work at or on behalf of the Church.[2] These latter claims rest on the contention that the volunteer defendants caused harm to Ms. Manter by failing to take steps to prevent her from suffering physical and psychological abuse from Father Michael about which they either knew or of which they should have been aware.
*710 Presented for decision is the consolidated Motions for Summary Judgment of the volunteer defendants. These defendants maintain that the personal injury claims that have been asserted against them are barred by the federal Volunteer Protection Act of 1997. For the reasons which follow, the Court agrees.
FACTUAL BACKGROUND
Plaintiff Susan Manter is an individual residing in Holden, Massachusetts. The Church is a parish of the Antiochian Orthodox Christian Archdiocese of North America. It is operated on a non-profit basis as a religious institution and house of worship. At all times relevant, Father Michael was a pastor of the Church.
Plaintiff participated in what she describes began as pastoral therapy sessions with Father Michael in or around 2006. These therapy sessions generally took place at the Church and in buddings connected to it. At some point, the sessions became mentally, physically and sexually abusive to Ms. Manter. Father Michael verbally berated plaintiff, assaulted her, bit her, hit her with both his hands and feet and with physical objects, and raped her. According to plaintiff, father Michael’s behaviors included screaming, throwing her around the room, and knocking over furniture, all of which (she alleges) could be heard throughout the building when they were occurring.
The 14 volunteer defendants are persons who at relevant times occupied a variety of different uncompensated positions associated with the Church. These positions included the Parish Council President, Treasurer of the Parish Council, Member of the Parish Council, and Sunday School Director. The incumbent defendants performed their duties for the Church on a strictly volunteer basis, receiving no financial or other form of compensation for their services.
Although the Amended Complaint conclusorily asserts that the volunteer defendants all knew or should have known about the abuse visited upon Ms. Manter by Father Michael, the summary judgment record contains virtually no admissible evidence to substantiate this charge. The record thus fails to identify precisely what any particular defendants are purported to have known about Father Michael’s abuse; when such defendants are alleged to have known it; what the nature and extent of the defendants’ duties were to the Church and its individual parishioners; and what the defendants specifically did or failed to do that amounted to a breach of such duties. Plaintiff simply points out that the volunteer defendants held position titles with the Church, asserts (without citing specific evidence) that they thereby possessed sufficient authority to prevent Father Michael from abusing her, and argues that their failure to exercise such authority in this case was actionably tortious.
DISCUSSION
The lone issue joined in the instant motions for summary judgment is whether or not the federal Volunteer Protection Act of 1997 immunizes the volunteer defendants from tort liability, and thereby bars the personal injury claims asserted by Ms. Manter. Although plaintiff has interposed a series of arguments as to why this statute is inapplicable in the present case, the Court finds none of them convincing.
The Volunteer Protection Act (“VPA” or the “Act”), 42 U.S.C. Sec. 14501 et seq., provides in most pertinent part as follows:
[N]o volunteer of a nonprofit organization or governmental entity shall be liable for harm caused by an act or omission of the volunteer on behalf of the organization or entity if—
(1) the volunteer was acting within the scope of the volunteer’s responsibilities in the nonprofit organization or governmental entity at the time of the act or omission;
(2) if appropriate or required, the volunteer was properly licensed, certified, or authorized, by the appropriate authorities for the activities or practice in the State in which the harm occurred where the activities were or practice was undertaken within the scope of the volunteer’s responsibilities in the nonprofit organization or governmental entity;
(3) the harm was not caused by willful or criminal misconduct, gross negligence, reckless misconduct, or a conscious flagrant indifference to the rights or safety of the individual harmed by the volunteer; and
(4) the harm was not caused by the volunteer operating a motor vehicle, vessel, aircraft, or other vehicle for which the State requires the operator or the owner of the vehicle to—
(A) possess an operator’s license; or
(B) maintain insurance.
42 U.S.C. Sec. 14503. The Court observes that the foregoing statute, by its unambiguous terms, appears to immunize the volunteer defendants from civil liability for harm caused by acts and omissions occurring during the course of their work for the Church. This is the very purpose of the VPA — viz., to encourage volunteerism in support of public charities and other nonprofit organizations by protecting volunteers from the risks and costs of liability litigation. See 42 U.S.C. Sec. 14501(a), (b).
First, there is no dispute but that the volunteer defendants are “volunteers” within the meaning of the VPA. The Act defines “volunteer” as “an individual performing services for a nonprofit organization or a governmental entity who does not receive . . . compensation (other than reasonable reimbursement or allowance for expenses actually incurred) ... or any thing of value in lieu of compensation, in excess of $500 per year, and such term includes a volunteer serving as a director, officer, trustee, or direct service volunteer.” See 42 U.S.C. Sec. 14505(6) (subsection lettering omitted). Here, the volunteer defendants performed their Parish Council officer and/or member services for the Church on a strictly volunteer basis, receiving no remuneration of any *711 kind other than reasonable reimbursement for out-of-pocket expenses. As such, they fall within the ambit of the VPA’s protections.
Second, the evidence reveals no genuine dispute of fact as to the Church’s status as a nonprofit organization. The affidavits on file reflect that the Church is organized as a parish of the Antiochian Orthodox Christian Archdiocese of North America. It is operated on a not-for-profit basis as a religious institution, youth ministry and house of worship in Worcester, Massachusetts. The VPA defines a “nonprofit organization” as, inter alia, “any not-for-profit organization which is organized and conducted for public benefit and operated primarily for charitable, civic, educational, religious, welfare, or health purposes and which does not practice any action which constitutes a hate crime . . .” 42 U.S.C. Sec. 14505(4)(B). The Church plainly meets this definition.
In her opposition to summary judgment, plaintiff attempts to place the Church’s status as a protected non-profit into dispute, arguing that her attorney was unable to locate a Section 501 (c) (3) entily by the name of “St. George Antiochian Orthodox Cathedral” among the tax-exempt organizations registered with the Massachusetts Secretary of State. The Court sees no need to belabor identifying the many different possible explanations that might elucidate the failure of counsel to locate the named entity on the Secretary of State’s website. Let it suffice to say that such failure hardly places into genuine dispute the sworn and uncontra-dicted affidavits of the volunteer defendants that the Church operates on a non-profit basis as a religious institution and house of worship.[3] If plaintiff seriously intended to contest the Church’s non-profit status, she has had substantial opportunity to develop the grounds for such a challenge during discovery. Having evidently failed to do so, the affidavit of plaintiffs counsel that he was unable to locate a particular entity on the Secretary of State’s website will not suffice to create a genuinely disputed issue of fact on the point.
Third, plaintiffs Amended Complaint alleges that, by not acting to protect Ms. Manter from Father Michael’s abuse, the volunteer defendants caused her harm. “Harm” for purposes of the VPA is defined to include “physical, nonphysical, economic and noneconomic losses.” See 42 U.S.C. Sec. 14505(2). The injuries alleged by plaintiff, therefore, fall squarely within the purview of the Act and its liabilify-immunizing provisions.
Finally, the Amended Complaint alleges that the harm claimed in this case resulted from acts and omissions occurring within the scope of the volunteer defendants’ responsibilities to and for the Church. (See Amended Complaint, passim.') Once again, therefore, such acts and omissions presumptively enjoy the liabilify immu-nify conferred by the VPA. Analogous cases applying the Act have so held in comparable circumstances. See, e.g., Entler v. Koch, 928 N.Y.S.2d 297, 299-300 (N.Y.App.Div. 2011) (dismissing civil action against Boy Scout leader accused of negligent supervision of troop leader who molested plaintiff on overnight trip).
In her opposition to summary judgment, plaintiff makes two principal arguments. First, plaintiff suggests that her claims for “noneconomic losses” — viz., physical and emotional pain, mental anguish, loss of life enjoyment, and the like — are “remove[d] from the protection of the VPA” and thus may be compensable in an action for damages. Plaintiff misreads the Act. Section 14504 of the VPA contains provisions addressing how damages for noneconomic losses are to be allocated. The Act provides in pertinent part as follows:
(a) GENERAL RULE. — In any civil action against a volunteer, based on an action of a volunteer acting within the scope of the volunteer’s responsibilities to a nonprofit organization or governmental entily, the liabilify of the volunteer for noneconomic losses shall be determined in accordance with subsection (b).
(b) AMOUNT OF LIABILITY.—
(1) IN GENERAL. — Each defendant who is a volunteer shall be liable only for the amount of non-economic loss allocated to that defendant in direct proportion to the percentage of responsibility of that defendant ... for the harm to the claimant with respect to which that defendant is liable . . .
42 U.S.C. Sec. 14504(a), (b).
Plaintiffs argument appears to be that, inasmuch as Section 14504 contemplates an allocation of nonecono-mic loss damages among responsible volunteers who cause the same, the VPA must have been understood to limit the liabilify immunify accorded to nonprofit volunteers to economic losses only. That is, claims for non-economic loss represent a wholesale exception to the immunify otherwise conferred by Section 14503. See ante. The Court does not agree. Section 14504 represents a rule by which noneconomic losses get allocated to volunteers on those occasions when no liability immunity avails to them This logically follows because the VPA contains a number of exceptions pursuant to which its broad immunify for nonprofit volunteers ceases to apply. These exemptions include circumstances in which the volunteer was operating a motor vehicle at the time of the harm (42 U.S.C. Sec. 14503(a)(4)), orwas engaged in criminal misconduct at such time (42 U.S.C. Sec. 14503(a)(3)), as well as suits brought by the affected nonprofit organization or governmental entily itself (42 U.S.C. Sec. 14503(b)), in addition to circumstances in which state law renders a liabilify immunify to suits brought by the government limited or inapplicable (42 U.S.C. Sec. 14503(d)). In all such circumstances, Section 14504 articulates a rule of damages allocation among volunteers whom the Act excepts from its immunify protections. This rule cannot rationally be construed to mean that all otherwise immunized volunteers forfeit their immunity, and are fully susceptible to suit, any time that noneconomic losses are claimed. Such a construction would render all but nugatory the immunify *712 provisions that lie at the heart of this law. The Court declines to follow such a course, and will instead read Sections 14503 and 14504 in the harmonious way that the legislature appears to have intended. See Bankers Life & Cas. Co. v. Commissioner of Insurance, 427 Mass. 136, 140 (1988) (statutes should be construed “so that effect is given to all its provisions, so that no part will be inoperative or superfluous”).
Second, plaintiff emphasizes that the VPA, by its terms, does not apply to cases in which “the harm was . . . caused by willful or criminal misconduct, gross negligence, reckless misconduct, or a conscious, flagrant indifference to the rights or safety of the individual harmed by the volunteer.” 42 U.S.C. Sec. 14503(a)(3). Plaintiff argues that, inasmuch as Ms. Manter was the victim of a crime of violence at the hands of Father Michael, the Act is inapplicable. Plaintiffs argument, however, overlooks the fact that this provision of the VPA only excepts volunteers from immunity for crimes inflicted on the individual “by the volunteer.” Id.[4] (Although the statute would perhaps have been clearer had it provided its exceptions for criminal misconduct and the like to the “individual [so] harmed by the volunteer,” the Court believes that this is the most natural reading of the law even in the absence of the linking term “so.”) Here, the evidence of record plainly reflects that only Father Michael, and not any of the volunteer defendants, is alleged to have committed criminal misconduct. This provision of Section 14503(a)(3), therefore, carries no application to the present case.
Plaintiff alternately argues that the Amended Complaint charges the volunteer defendants with “gross negligence” in failing to take steps that would have protected her from Father Michael’s abuse. Although the Amended Complaint does, to be sure, make this accusation repeatedly, the summary judgment record is bereft of any evidence that would sustain a finding of gross negligence on the part of the volunteer defendants. Beyond the unadorned and conclusoiy allegations contained in the pleading itself, the only actual evidence put forward by plaintiff to support her claims is the testimony of one Donald Peters from a federal criminal proceeding against Father Michael. Mr. Peters’ testimony, however, makes only vague reference to “rumors” regarding an abusive relationship between Father Michael and Ms. Manter, and to the fact that unnamed parishioners and members of the Parish Council knew about this. Mr. Peters identifies no specific knowledge held by any named volunteer defendants, establishes no basis for his own knowledge in regard to what he claims to have been known by these defendants, and provides no specific information as to what such defendants could have done but failed to do for Ms. Manter under the circumstances. Accordingly, the record contains no substantially probative evidence of gross negligence on the part of any of the volunteer defendants such as would defeat application of the VPA immunity they enjoy. See First Nat’l Bank of Boston v. Ibarra, 47 Mass.App.Ct. 660, 663 (1999) (“Vague and general allegations of expected proof are wholly inadequate”); Haverty v. Commissioner of Corrections, 437 Mass. 737, 754 (2002) (“generalized statements . . . devoid of specific details” held insufficient to create genuine issue of material fact).
CONCLUSION AND ORDER
In accordance with the foregoing, the Motions for Summary Judgment of the 14 volunteer defendants are ALLOWED in their entirety.[5]

 The individual defendants so named (hereinafter the “volunteer defendants”) are Fawaz El-Khoury, Mary-Ann Kourey, Victor Kourey, Steve Husson, Brian Hurley, David Orfalea, Michael Houssan, Elaine Saliba, George El-Houssan, Douglas Haddad, Nicholas Keany, Stephen Kalil, Kamille Nasrah, and Floren Dejeu.

 The Church could, of course, qualify as a covered nonprofit organization without being a tax-exempt entity under Section 501(c)(3) of the Internal Revenue Code. This is why the VPA’s alternate definition of “nonprofit organization” quite explicitly does not require that the entity be a Section 501(c)(3) tax-exempt.

 In this regard, the exceptions from the Act’s liability immunity are of a piece with the parallel provisions of 42 U.S.C. Sec. 14503(f), which similarly remove from immunity volunteers who have been convicted of a hate crime, a sexual offense, a state or federal civil rights violation, or who were found to have been under the influence of drugs or alcohol at the time of their misconduct.

 In light of the fact that plaintiff has, to this point, taken only what she describes as “limited” discovery, the Court will entertain a motion to vacate summary judgment under Rule 60(b) as to any volunteer defendant whom actual evidence demonstrates to have engaged in gross negligence within the meaning of Massachusetts law. Counsel are cautioned, however, to be mindful of both the heightened standard of liability that applies in this context, and of the need to demonstrate excusable neglect or other grounds for relief before pursuing such a course.